**ORIGINAL**

# In the United States Court of Federal Claims

**FILED**

No. 13-464C
(Filed: May 16, 2014)

MAY 1 6 2014

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| AARON G. FILLER, ) | |
| ) | *Pro Se* Plaintiffs; Motion to Dismiss for |
| Plaintiff, ) | Lack of Subject Matter Jurisdiction; |
| ) | RCFC 12(b)(1); Motion to Dismiss for |
| v. ) | Failure to State a Claim upon Which |
| ) | Relief Can Be Granted; RCFC 12(b)(6); |
| THE UNITED STATES OF AMERICA, ) | Taking of Property Without Just |
| ) | Compensation; Medical License |
| Defendant. ) | |

*Aaron G. Filler*, Santa Monica, CA, Plaintiff, *pro se*.

*James Sweet*, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER GRANTING MOTION TO DISMISS

**KAPLAN, Judge:**

Dr. Aaron Filler has filed a pro se complaint alleging that the United States ("the government") effected a Fifth Amendment taking of his medical license without just compensation. He claims that the taking occurred as a result of the acts of Susan Walker, a biologist and regional director with the National Marine Fisheries Service ("NMFS") of the National Oceanic and Atmospheric Administration ("NOAA"), a division within the United States Department of Commerce. He requests "damages in an amount to be proven at trial but no less than ten million dollars." Am. Compl. ¶ 130.

Pending before the Court is the government's motion to dismiss for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), respectively. With respect to subject matter jurisdiction, the government argues that the conduct about which Dr. Filler complains, if anything, constitutes a tort, not a taking, and thus, this Court lacks subject matter jurisdiction over Dr. Filler's claim. Furthermore, the government argues, Dr. Filler "fails to articulate [a takings] claim within this Court's jurisdiction" because, according to the government, he has not alleged sufficient facts to establish that Ms. Walker acted on behalf of the government when she engaged in the acts alleged to have resulted in the taking of his

property. Def.'s Mot. to Dismiss 6-7 [hereinafter "Def.'s Mot."]. Finally, the government argues that Dr. Filler fails to state a claim upon which relief can be granted because there is no compensable property interest in a medical license for purposes of the Takings Clause. For the reasons that follow, the Court grants the government's motion under RCFC 12(b)(6) and dismisses Dr. Filler's complaint with prejudice.

## BACKGROUND

Dr. Filler is a neurosurgeon based in Santa Monica, California. Am. Compl. ¶ 6. In 2010, Susan Walker sought treatment from Dr. Filler, and Dr. Filler performed medical procedures on her, including injections of medication. See id. ¶ 87, Ex. 11 at 265. The complaint alleges that on January 31, 2011, Ms. Walker posted the following comment, referring to Dr. Filler and his treatments, on www.RunningForums.com under the username "sueinjuneau":

> Dr. Filler uses Wydase, which is a brand name of the enzyme hyaluronidase, in his piriformis injections to, in theory, break down scar tissue.
>
> Wydase is a medical preparation of highly purified bovine testicular enzyme, made previously by Wyeth Pharmaceuticals in England. Production ceased due to the possible transmission of bovine spongiform encephalitis, or mad cow disease, though there is no documentation of transmission through this route.
>
> Interestingly, Wydase is no longer manufactured and has not been manufactured in at least seven years, so I'm not sure why Filler refers to the use of Wydase, and given the remote risk of CSE[1] transmission that it poses, injecting it directly adjacent to a nerve does not seem advised.

Am. Compl. ¶ 49. This comment and others that Ms. Walker posted on various other web sites were the bases of an action for defamation and interference with prospective economic advantage in California state court and an administrative claim under the Federal Tort Claims Act, 28 U.S.C. § 1346, with the Department of Commerce, which Dr. Filler pursued prior to bringing his takings claim in this Court. See Def.'s Mot. 4-5.

Dr. Filler alleges that Ms. Walker posted the comment on RunningForums.com during working hours on a government computer and that the comment drew from Ms. Walker's NOAA training and constituted a "public warning about danger to the health and safety of the United States populace." Am. Compl. ¶¶ 4, 48-49. He also alleges that the comment, "though false, is certain to cause fear in those patients who have been injected, their families and co-workers as well as causing fear in others considering visiting Dr. Filler for treatment." Id. ¶ 42. He claims that Ms. Walker acted as an agent of the United States when she posted the comment and that the comment diminished the value of his medical license so completely that it constituted an inverse

---

[1] By "CSE," Ms. Walker likely meant "BSE"—that is, bovine spongiform encephalitis.

condemnation,[2] for which the Fifth Amendment requires just compensation. Id. ¶¶ 5, 36-37, 129-31.

## DISCUSSION

### I.  The Court Has Jurisdiction over Dr. Filler's Takings Claim

The United States Court of Federal Claims is a court of limited jurisdiction that, pursuant to the Tucker Act, may hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1305-06 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Takings claims fall squarely within this Court's subject matter jurisdiction. McKown v. United States, 114 Fed. Cl. 553, 555 (2014) (citing Keene Corp. v. United States, 508 U.S. 200, 205 (1993)). Nonetheless, the government argues that Dr. Filler's complaint should be dismissed for lack of subject matter jurisdiction because, "[n]otwithstanding that Dr. Filler alleges a takings claim here, that claim in fact sounds in tort," and the Tucker Act specifically excludes tort claims from this Court's jurisdiction. Def.'s Mot. 7; 28 U.S.C. § 1491(a)(1). To support this argument, the government cites Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir. 2003), which sets forth a "two-part inquiry" for "distinguishing potential physical takings from possible torts."

The government's reliance on Ridge Line is misplaced. Contrary to the government's argument, the Ridge Line analysis addresses the merits of a takings claim, not this Court's subject matter jurisdiction. See Moden v. United States, 404 F.3d 1335, 1340 (Fed. Cir. 2005). Because confusion between merits and jurisdictional issues occurs with some frequency, especially in cases arising under the Tucker Act, the Federal Circuit has clarified that "subject matter jurisdiction exists when a [plaintiff] asserts a nonfrivolous claim" that falls within this Court's general subject matter jurisdiction. Id. In other words, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions . . ., or otherwise completely devoid of merit as not to involve a federal controversy.'" Steel Co. v. Citizens for a Better Env't,

---

[2] "Inverse condemnation" is a type of takings claim; whereas condemnation occurs when the government undertakes the legal proceedings necessary to assume ownership of property under its eminent domain power, inverse condemnation occurs when the property owner undertakes legal proceedings to have a government action declared a taking and to recover just compensation due pursuant to the Fifth Amendment. See Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005).

523 U.S. 83, 89 (1998) (quoting Oneida Indian Nation of N.Y. v. Cnty. Of Oneida, 414 U.S. 661, 666 (1974).

Although the Court ultimately finds that Dr. Filler fails to state a claim upon which relief can be granted, his claims are not so "insubstantial" or "devoid of merit" as to bring into question this Court's subject matter jurisdiction to hear them. Thus, because Dr. Filler has asserted a nonfrivolous takings claim founded upon the Fifth Amendment—a money-mandating constitutional provision grounding a cause of action—jurisdiction under the Tucker Act is proper. See Moden, 404 F.3d at 1341.

## II. Dr. Filler Fails to State a Claim Upon Which Relief Can Be Granted

When considering a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in . . . [the plaintiff's] favor." Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000). The motion will be granted when the facts asserted by the plaintiff fail to "raise a right to relief above the speculative level." Am. Contractors Indem. Co. v. United States, 570 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, plaintiff's claim must be plausible on its face. Twombly, 550 U.S. at 570; Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Conclusory allegations of law and unwarranted inferences of fact do not," however, "suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir.1998) (citations omitted).

Where, as here, the plaintiff is pro se, his pleading is held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even taking into consideration Dr. Filler's pro se status, the Court concludes that his allegations are insufficient, as a matter of law, to state a claim for relief under the Takings Clause. Specifically, the facts that Dr. Filler alleges in his complaint do not support his conclusory assertion that Ms. Walker acted on behalf of the government when she posted the comments in question on RunningForums.com. Further, and in any event, Dr. Filler's medical license does not, as a matter of law, constitute a compensable property interest within the meaning of the Takings Clause.

### A. Dr. Filler has not alleged sufficient facts to support a reasonable inference that Ms. Walker acted on behalf of the government when she posted her online comment.

It is well settled that a compensable taking does not arise unless there is action by the government and even then, "'only if the government action in question is authorized,'" PI Elec. Corp. v. United States, 55 Fed. Cl. 279, 288 (2003) (quoting Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998)); see also Bd. Mach., Inc. v. United States, 49 Fed. Cl. 325, 328 (2001) (observing that "[i]n order to obtain compensation for a government taking, the act must be attributable to the sovereign"). If the action is not authorized, it "is not

4

the act of the government" at all. <u>Blanchette v. Conn. Gen. Ins. Corps.</u>, 419 U.S. 102, 127 n.16 (1974) (quoting <u>Hooe v. United States</u>, 218 U.S. 322, 336 (1910)). An action by a government agent is authorized, and implicates the Takings Clause, if the agent "act[s] within the general scope of [her] duties, <u>i.e.</u>, if [her] actions are a 'natural consequence of Congressionally approved measures,' or are pursuant to 'the good faith implementation of a Congressional Act.'" <u>Del-Rio</u>, 146 F.3d at 1362 (internal citations omitted) (quoting <u>NBH Land Co. v. United States</u>, 576 F.3d 317, 319 (Ct. Cl. 1978); <u>S. Cal. Fin. Corp. v. United States</u>, 634 F.2d 521, 525 (Ct. Cl. 1980)); see also <u>Americopters, LLC v. United States</u>, 95 Fed. Cl. 224, 232 (2010) (observing that permitting takings claims based on actions of government employees that are not within the scope of agency actions authorized by Congress or of their own individual duties "would open the Treasury to takings claims in which the government, <u>qua</u> government, had no intention to act, much less to take property").

Here, the factual allegations in Dr. Filler's complaint do not support his conclusory assertion that Ms. Walker was acting in her official capacity or on behalf of the government when she posted the comments in question. In fact, his factual assertions actually demonstrate precisely the opposite. Dr. Filler alleges in his complaint that Ms. Walker is employed as a marine biologist at the NMFS within the NOAA, a division of the Department of Commerce. Am. Compl. ¶ 7. This agency's authority derives from the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. Ch. 38, the Marine Mammal Protection Act, 16 U.S.C. Ch. 31, and the Endangered Species Act, 16 U.S.C. Ch. 35. These statutes authorize the NMFS to manage, conserve, and protect living marine resources in waters controlled by the United States. NMFS does not have the authority to regulate medical practices or drug safety. Therefore, even if Ms. Walker's posting on RunningForums.com is construed as, in Dr. Filler's words, "a public warning about danger to the health and safety of the United States populace," Am. Compl. ¶ 4, such an action would not fall within the official scope of authority of an employee of the NMFS generally, much less of Ms. Walker in particular.

In asserting that Ms. Walker acted "within the scope of her authorized duties," Am. Compl. ¶¶ 95, 108, Dr. Filler cites various statutes and regulations reflecting "[t]he interest of the United States in . . . preventing the spread of . . . BSE." Am. Compl. ¶¶ 51, 55 (citing a provision within the Animal Health Protection Act, several provisions within Titles 9 and 21 of the C.F.R., as well as 49 C.F.R. § 173.134). Each provision that Dr. Filler lists, however, falls within the enforcement purview of either the Department of Agriculture or the Food and Drug Administration; none implicates the authority of the Department of Commerce, let alone the NOAA or NMFS. <u>See, e.g.</u>, 7 U.S.C. § 8302(14) (indicating that the Secretary of Agriculture is responsible for the implementation of the Animal Health Protection Act); 21 C.F.R. § 810.2 (indicating that the regulations in the part of the C.F.R. implement the Federal Food, Drug, and Cosmetic Act). Dr. Filler himself recognizes that the authorities he cites for "[t]he role of the United States in public warnings," 21 C.F.R. §§ 810.2, 7.42, are addressed to the Food and Drug Administration. <u>See</u> Am. Compl. ¶ 55. Thus, they cannot have provided the authorization for Ms. Walker to post an anonymous comment regarding the safety of any particular medical practice on RunningForums.com.

Leaving aside the conclusory assertions in Dr. Filler's complaint, such as the statement that "[t]he purpose of [Ms. Walker's] action was to serve the public purpose of protecting the

United States population from infection by the Bovine Spongiform Encephalopathy prion agent," Am. Comp. ¶ 48, the facts alleged in the complaint do not raise the prospect, even at the speculative level, that Ms. Walker acted in her capacity as a government official when she posted the comment on RunningForums.com. To the contrary, the facts show that Ms. Walker acted in her individual capacity as a former patient of Dr. Filler for her independent purpose of conveying her personal views on the efficacy and advisability of the treatment that she believed Dr. Filler had used on her and other patients. Therefore, because he failed to sufficiently allege an authorized government action that could conceivably constitute a taking, Dr. Filler's complaint must be dismissed.

### B. In any case, a medical license does not constitute a cognizable property interest within the meaning of the Takings Clause.

A threshold element of a takings claim is whether the plaintiff has a cognizable property interest for purposes of the Fifth Amendment. Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004). "If a plaintiff is unable to prove that he held a protected property interest, his takings claim will fail." Webster v. United States, 74 Fed. Cl. 439, 446 (2006) (citing Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001)). In this case, even assuming that Dr. Filler had alleged sufficient facts to establish that Ms. Walker was acting within the scope of her duties when she posted the comments at issue, his claim would necessarily fail because, as a matter of law, a medical license does not constitute property cognizable under the Takings Clause.

"The Constitution neither creates nor defines the scope of property interests compensable under the Fifth Amendment." Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir. 2002) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Therefore, "'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." Conti, 291 F.3d at 1340 (quoting Lucas v. S. Carolina Coastal Council, 505 U.S. 1003, 1030 (1992)).

"The rights to sell, assign, or otherwise transfer are traditional hallmarks of property." Conti, 291 F.3d at 1341 (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435-36 (1982)). Accordingly, the Federal Circuit has held that, assuming "the absence of express statutory language precluding the formation of a property right," a cognizable property interest in a government permit or license requires both a "right to transfer" and a "right to exclude." Members of Peanut Quota Holders Ass'n, Inc. v. United States, 421 F.3d 1323, 1331 (Fed. Cir. 2005). The government argues that, as a matter of law, a medical license does not meet either of these requirements. The Court agrees.

First, it is clear that the holder of a medical license cannot sell or transfer his medical license to another individual or entity; a medical license can only be obtained by meeting the requirements specified in state law for the holders of such licenses. See Webster, 74 Fed. Cl. at 447 (holding that "[b]ecause plaintiff does not have the right to sell, assign, or otherwise transfer her medical license, a medical license does not possess the requisite indicia of transferability"). Dr. Filler's arguments to the contrary are unpersuasive. See Pl.'s Resp. 14-20. He argues, for

instance, that a medical license is subject to forfeiture under 21 U.S.C. § 853 if it is used to commit a controlled substances violation, and that generally, a civil forfeiture order transfers title in the property to the government. See Pl.'s Resp. 18-19 (citing Shelden v. United States, 7 F.3d 1022, 1026 (Fed. Cir. 1993)). As the government observes, however, whether something is transferable for purposes of establishing a compensable property interest depends upon "whether the citizen had the right[] to . . . transfer[] or dispose of the property," not whether the government could compel the citizen to relinquish it. Def.'s Reply 7 (quoting Peanut Quota Holders, 421 F.3d at 1330 (emphasis added)).

Dr. Filler also argues that a medical license is transferable to a medical corporation and that a medical license transfers to a physician's heirs upon the physician's death, citing Palmer v. Superior Court, 127 Cal. Rptr. 2d 252 (Cal. Ct. App. 2002), and Flores v. Natividad Medical Center, 238 Cal. Rptr. 24 (Cal. Ct. App. 1987). Pl.'s Resp. 19-20. These cases do not support Dr. Filler's arguments, however. Rather, they analyze whether statutory limitations on damages in medical malpractice actions apply when the defendant is a medical corporation or the estate of a deceased physician.

Nor does a "right to exclude" exist with respect to a medical license. As the Federal Circuit reasoned with respect to fishing licenses in Peanut Quota Holders:

> A license represents a limited suspension of the otherwise general restrictions imposed by the government—in the case of a fishing license, it is merely a representation by the government that it will not interfere with the licensee's efforts to catch fish. The number of licenses to be issued under such a scheme is not fixed. Each additional license dilutes the value of the previously issued licenses. So long as the government retains the discretion to determine the total number of licenses issued, the number of market entrants is indeterminate. Such a license is by its very nature not exclusive.

Peanut Quota Holders, 421 F.3d at 1333-34.

As this Court observed in Webster, 74 Fed. Cl. at 447, the same result obtains with respect to medical licenses. Thus, because "[t]he number of medical licenses issued is not subject to a fixed limit by the Government," and because the issuance of medical licenses is controlled by the states and not the federal government, "medical licenses, like the fishing licenses described in Peanut Quota Holders, are not exclusive by their very nature." Webster, 74 Fed. Cl. at 447; see also Am. Pelagic Fishing Co., 379 F.3d at 1374 (citing Conti, 291 F.3d at 1341-42 (no property interest in fishing licenses or permits that "did not confer exclusive fishing privileges" and that "the government at all times retained the right to revoke, suspend, or modify").

The Court is not persuaded by Dr. Filler's argument that Peanut Quota Holders and similar cases articulate "an extremely narrow aspect of exclusion" and that a better indicator of the right to exclude is a physician's discretion to permit or not permit nurses, paramedics, and medical assistants from working under his or her supervision. See Pl.'s Resp. 15-16. Dr. Filler's alternative theory is at odds with the Federal Circuit's approach, which holds that a citizen does

7

not possess the "right to exclude" if "the citizen is in an area subject to government control," such as medical licensing. Mitchell Arms, Inc. v. United States, 7 F.3d 212, 216 (Fed Cir. 1993). In an area of such pervasive government regulation, a person has "no right to exclude the government from intruding upon its possession of the property at issue," and "that property interest [is] not a compensable one." Mike's Contracting, LLC v. United States, 92 Fed. Cl. 302, 307-08 (2010) (citing Mitchell Arms, 7 F.3d at 215).

Finally, Dr. Filler cites a number of decisions holding that medical licenses are considered property for purposes of the due process clause. Pl.'s Resp. 11-12. The question of whether there is a property interest in a government benefit like a license for purposes of the due process clause is whether an individual has a "legitimate claim of entitlement" to the license or benefit. Roth, 408 U.S. at 577. As the D.C. Circuit observed in Kizas v. Webster, 707 F.2d 524, 539 (D.C. Cir. 1983), however, the presupposition that a "legitimate claim of entitlement" rises to the level of "property" protected by the Takings Clause is "without foundation." As the court noted, "the fifth amendment employs two independent clauses to address two independent issues. A claim of deprivation of property without due process of law cannot be blended as one and the same with the claim that property has been taken for public use without just compensation." Id. at 539 (alteration omitted).

In short, the test of whether a property interest exists in a medical license for purposes of the Takings Clause is set forth in Peanut Quota Holders and related cases. For the reasons set forth above, a medical license is not considered "property" for purposes of the Takings Clause because it does not carry with it a right to transfer or a right to exclude. Accordingly, on this basis as well, Dr. Filler's complaint fails to state a claim for which relief can be granted.[3]

## CONCLUSION

Based on the foregoing, the government's motion to dismiss pursuant to RCFC 12(b)(6) is **GRANTED**, and the complaint is dismissed with prejudice. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

_____
ELAINE D. KAPLAN
Judge

---

[3] Given the Court's conclusion that Dr. Filler has failed to establish the existence of a property interest in his medical license or to allege facts sufficient to show that Ms. Walker acted on behalf the government and in her official capacity when she posted her online comment, the Court finds it unnecessary to reach the merits of the government's argument, based on Ridge Line, that any interference with plaintiff's medical license was not "substantial and frequent enough to rise to the level of a taking." Def.'s Mot. 8 (quoting Ridge Line, 346 F.3d at 1357); see Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir. 2005) (where there is no valid property interest at stake, court will not determine whether the governmental action at issue amounted to a compensable taking of property).